UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Auzio Hewlett,                                          No. 18-cv-2293 (WMW/LIB)

           Petitioner,

    v.                                          **REPORT AND RECOMMENDATION**

Warden, FMC Rochester,

           Respondent.

This matter comes before the undersigned United States Magistrate Judge upon Auzio Hewlett's Petition for Writ of Habeas Corpus, [Docket No. 1]. The present case has been referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For reasons discussed herein, the Court recommends that the Petition for Writ of Habeas Corpus, [Docket No. 1], be **DENIED** and that the present action be **DISMISSED with prejudice**.

## I.     BACKGROUND AND STATEMENT OF FACTS

On August 6, 2018, Petitioner Auzio Hewlett ("Petitioner"), an individual in the custody of the Federal Bureau of Prisons (BOP), being housed at the Federal Medical Center in Rochester, Minnesota ("FMC Rochester"), proceeding *pro se*, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (Petition [Docket No. 1]).

Petitioner challenges the constitutionality of a BOP disciplinary proceeding that resulted in (1) the determination that Petitioner committed a Code 296 BOP violation, namely, Use of Mail for Abuses Other Than Criminal Activity; and (2) Petitioner's deprivation of 14 days of good conduct time and the loss of his email and commissary privileges for 60 days. Petitioner represents that he has exhausted all available internal, administrative remedies. (Id. at 5).

Petitioner is currently serving a 240-month sentence for Conspiracy to Distribute and Possession with Intent to Distribute 50 Grams of Crack and 5 Kilograms of Cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 18 U.S.C. § 2. (DeLoia Decl. [Docket No. 9]). Petitioner's current projected release date is July 14, 2020. (Id.).

On November 8, 2017, at approximately 2:56 p.m., Petitioner sent an email to BB@gmail.klolk.com, requesting to be signed up for a texting service that would allow him to send text messages through email. (Ex. D, [Docket No. 9-3], at 6). On November 9, 2017, Petitioner received an email response from "Jan Hilmer" informing him that the texting service would cost him $15.00 a month. (Id. at 7). On November 16, 2017, Petitioner received an email informing him that the search provider had received money to be added to his account. (Id. at 10). On November 17, 2017, Petitioner received an email confirming that his account with the texting service had been set up and was available for him to use. (Id. at 11). The email also included instructions on how to send and receive text messages using the service. (Id.).[1]

At 6:26 p.m. on November 20, 2017, using the texting service, Petitioner sent an email to VVDog@gmail.pacetelephone.com, with "#5133227566" written at the top of the "message" portion of the email. (Id. at 14). The body of the email stated, "Hey Mom…Its Your son AUZIO. :-) You can text me back at this number. I sent Bro a message about nephew. I haven't heard anything back yet. I really hope you don't stay in that house with him. Its not even worthy trying to figure out what's in his head." (Ex. D, [Docket No. 9-3], at 14).

On November 21, 2017, Officer Justin Wendt (hereinafter "Officer Wendt") emailed SIS Technician Fritz (hereinafter "Reporting Officer Fritz") that Petitioner was using a messaging

---

[1] According to the confirmation email, in order to send a text message, a user should fill in the "subject" line of an email with a normal title and, in the first line of the "message" area of the email, should include a pound sign followed by a ten-digit phone number. (Ex. D, [Docket No. 9-3], at 11).

service to communicate with "his people." (Ex. D, [Docket No. 9-3], at 2). On November 22, 2017, Reporting Officer Fritz spoke with Petitioner and questioned him about the texting service. (Id. at 4). According to Reporting Officer Fritz, Petitioner told him that he was using the texting service because "his buddy [ ] beat his incident report for the same thing so he is going to use the same [texting] service now." (Id.).

On November 27, 2017, Reporting Officer Fritz completed his initial investigation into Petitioner's use of the texting service and determined that the number contained in Petitioner's email, #5133227566, was not one of the 459 phone numbers on Petitioner's phone list. (Id.). Because the phone number was not on Petitioner's phone list, Reporting Officer Fritz concluded that Petitioner had violated Code 296. After Reporting Officer Fritz's initial investigation was completed, Lieutenant Wieczorek, as the official investigating officer, further investigated the matter by confirming Report Officer Fritz's findings and thereafter gave Petitioner a copy of Incident Report No. 3060707 and the accompanying documentation. (Id. at 4). Lieutenant Wieczorek also advised Petitioner of his rights during the disciplinary process. (Id. at 5). Petitioner acknowledged that he understood his rights and declined to make a statement at that time. (Id.). Lieutenant Wieczorek then referred Petitioner's incident report to the Unit Disciplinary Committee ("UDC") for an initial hearing.

On November 30, 2017, the UDC conducted an initial hearing on Incident Report No. 3060707. (Id. at 3). Petitioner signed a form acknowledging that he understood his rights during the disciplinary process. (Ex. E [Docket No. 9-3]). During the hearing, Petitioner stated the he was "not guilty." (Id.). The UDC, however, found that Petitioner violated Code 296 and recommend a loss of good conduct time.[2] (Id.).

---

[2] According to BOP regulations, disciplinary charges are brought against inmates by means of an "incident report." 28 C.F.R. § 541.5. An incident report is initially reviewed by a Unit Disciplinary Committee ("UDC"). 28 C.F.R. §

On December 13, 2017, Disciplinary Hearing Officer ("DHO") DeLoia conducted Petitioner's DHO hearing on Incident Report No. 3060707. (Ex. G. [Docket No. 9]). At the DHO hearing, Petitioner was advised of his rights and he stated that he understood those rights. (Id. at 4).[3] Petitioner did not request a staff representative nor witnesses, and he presented no documentary evidence. (Id.). After reviewing the incident report and supporting evidence, the DHO concluded that the evidence established that Petitioner's actions violated Code 296, Use of Mail for Abuses Other Than Criminal Activity. (Id.). In reaching this decision, the DHO considered the TRULINCS documentation provided by Reporting Officer Fritz (the copies of Petitioner's messages), which corroborated the staff's written report showing that the phone number was not on Petitioner's approved contact list.[4]

## II.    PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241

Petitioner challenges the above-described disciplinary proceeding – the determination that Petitioner committed a prohibited act and the subsequently-imposed penalty – as unconstitutional, alleging the following due process violations: (1) Reporting Officer Fritz served as both the reporting officer and the investigating officer in violation of BOP policy; (2) there was insufficient evidence to charge him with violating Code 296 because the electronic message was never actually forwarded by the third-party service; and (3) the sanctions imposed were excessive. (Petition, [Docket No. 1], at 3).

---

541.7. The UDC can refer the matter to a Disciplinary Hearing Officer (DHO) for further review. Id. The DHO then conducts a new hearing on the incident report, and renders a final decision on the charges against the inmate. 28 C.F.R. § 541.8.

[3] A DHO is an impartial discipline hearing officer who is responsible for conducting institution disciplinary hearings and imposing appropriate sanctions. See, 28 C.F.R. § 541.8.

[4] TRULINCS is a closed electronic message program operated in connection with CorrLinks, which provides inmates access to email and gives the BOP staff the ability to monitor the email. (DeLoia Decl. [Docket No. 9]).

4

### A.      Standard of Review

A federal prisoner may petition a federal district court for relief pursuant to 28 U.S.C. § 2241 when challenging the execution of his sentence or the length or duration of his confinement. Jones v. Jett, No. 10-cv-4201 (MJD/AJB), 2011 WL 5507222, at *2 (D. Minn. Aug. 12, 2011) report and recommendation adopted, No. 10-cv-4201 (MJD/AJB), 2011 WL 5408009 (D. Minn. Nov. 8, 2011) aff'd, 470 F. App'x 522 (8th Cir. 2012) (citing Matheny v. Morrison, 307 F.3d 709, 711 (8th Cir. 2002); Mcintosh v. U.S. Parole Com'n, 115 F.3d 809, 812 (10th Cir. 1997) (holding that a federal inmate's challenge to a loss of good time credit is properly brought under Section 2241 because it is a challenge to an action affecting the fact or duration of the petitioner's custody)). In the present case, Respondent does not dispute that Petitioner appropriately exhausted his administrative remedies with respect to the issue presently before the Court, and Respondent agrees that jurisdiction pursuant to 28 U.S.C. § 2241 is proper because Petitioner challenges a disciplinary matter that resulted in a loss of good conduct time thus affecting the duration of Petitioner's confinement.

The United States Supreme Court has recognized that "due process requires procedural protections before a prison inmate can be deprived of a protected liberty interest in good time credits." Superintendent, Massachusetts Corr. Inst., Walpole v. Hill, 472 U.S. 445, 453 (1985) (citing Wolff v. McDonnell, 418 U.S. 539 (1974)); See also, Espinoza v. Peterson, 283 F.3d 949, 951 (8th Cir. 2002) (depriving a federal inmate of thirteen days good time credit as discipline for violating a prison rule implicates a liberty interest that is protected by the Due Process Clause).

> Where a prison disciplinary hearing may result in the loss of good time credits, Wolff held that the inmate must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.

<u>Hill</u>, 472 U.S. at 454 (<u>citing</u> <u>Wolff</u>, 418 U.S. at 563–567). "Where a prisoner has a liberty interest in good time credits, the loss of such credits threatens his prospective freedom from confinement by extending the length of imprisonment. Thus, the inmate has a strong interest in assuring that the loss of good time credits is not imposed arbitrarily." <u>Hill</u>, 472 U.S. at 454 (citations omitted). However, an inmate's due process interests are necessarily tempered and balanced against the "legitimate institutional needs of assuring the safety of inmates and prisoners, avoiding burdensome administrative requirements that might be susceptible to manipulation, and preserving the disciplinary process as a means of rehabilitation." <u>Id.</u> at 454–55 (citing <u>Ponte v. Real</u>, 471 U.S. 491 (1985); <u>Baxter v. Palmigiano</u>, 425 U.S. 308, 321–322 (1976); <u>Wolff</u>, 418 U.S. at 562–563).

Accordingly, a federal inmate has received due process if "some evidence" supports a prison disciplinary board's revocation of good time credits. <u>Hill</u>, 472 U.S. at 455. "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." <u>Id.</u> at 455–56. The United States Supreme Court explicitly declined to adopt a more stringent standard for reviewing prison disciplinary decisions, as due process "does not require courts to set aside decisions of prison administrators that have some basis in fact." <u>Id.</u> at 456. The power of federal courts to review the decision of the prison disciplinary hearing officer is limited because "[t]he federal courts are not part of the appellate process for prison disciplinary proceedings." <u>Toombs v. Hicks</u>, 773 F.2d 995, 997 (8th Cir. 1985) (citing <u>Courtney v. Bishop</u>, 409 F.2d 1185, 1187 (8th Cir. 1969)).

### B.    Analysis

Based on the evidence in the present record, Petitioner received constitutionally required protections during the course of the at issue disciplinary proceeding.

Petitioner first contends that his due process rights were violated because Reporting Officer Fritz acted as both the reporting officer and the investigating officer regarding the incident at issue. Under BOP policy, the investigating officer must be of a supervisory level and "may not be the employee reporting the incident or otherwise be involved in the incident." See, 28 C.F.R. § 541.5(b). The record, however, shows that Reporting Officer Fritz served as the reporting officer while Lieutenant Wieczorek served as the investigating officer. Thus, Petitioner's argument that Reporting Officer Fritz violated BOP policy by serving as both the reporting officer and the investigating officer is unsupported by the record.

The record also shows that Petitioner received advanced written notice of the charges against him when he received a copy of the written incident report on November 27, 2017. Three days later, Petitioner received a UDC hearing on November 30, 2017. Then, on December 13, 2017, Petitioner received a DHO hearing, complete with advance notice of the opportunity to call witnesses and present evidence on his behalf at the hearing. Petitioner declined the opportunity to have a staff representative appointed and declined the opportunity to call witnesses. Finally, following the hearing, the present record before the Court indicates that Petitioner received a copy of the written DHO decision setting forth the specific evidence on which the Committee relied in arriving at its decision and its reasons for imposing the chosen sanctions. From the present record, it is evident that the Petitioner received (1) advanced written notice of the charge, (2) an opportunity to call witnesses and present evidence, and (3) a written statement by the factfinder,

thus satisfying the Wolff, 418 U.S. at 563–567, requirements, and therefore, he was not deprived of constitutional due process.

Furthermore, the present record before the Court indicates that "some evidence" supported the finding of the DHO that Petitioner violated Code 296. BOP Code 296 prohibits "[u]se of mail for abuses other than criminal activity which circumvent mail monitoring procedures." 28 C.F.R. § 541.3, Table 1, Code 296; See also, Johnson v. Zuniga, No. 1:15-CV-00493-SKO HC, 2017 WL 6513229, at *2 (E.D. Cal. Dec. 20, 2017). Here, the UDC and DHO relied on the copies of the emails sent by Petitioner, as well as, Petitioner's approved phone number list, which did not contain the number Petitioner used the texting service to send a text message to. Thus, when Petitioner sent a text message to a number that was not on his approved contact list, he prevented the BOP from identifying the ultimate recipient of the communication in violation of Code 296.[5] Because the record identifies evidence that could support the conclusion reached by the disciplinary board, the Court is to look no further into Petitioner's evidentiary challenges. As articulated in the standard of review section, supra, the "some evidence" standard does not require examination of the entire record before the disciplinary board nor an independent analysis and/or weighing of the evidence available to the board. "The Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board. Instead, due process in this context requires only that there be some evidence to support the findings made in the disciplinary hearing." Hill, 472 U.S. at 457. The Court finds that "some evidence" support the results of the subject disciplinary proceeding.[6]

---

[5] The Court notes that under Program Statement 4500.11, CN-1, Trust Fund/Deposit Fund Manual, page 135, Section 3 and Subsection (a), using TRULINCS and Corrlinks inmates normally "request to exchange emails with a person in the community by creating a contact with an email address. If the contact consents to receive emails, that person is activated on the inmate's email contact list." This, however, does not happen with email-to-text messages and therefore, the phone number must be on the inmate's phone number list.

[6] Throughout his Petition and Reply, Petitioner argues that he did not actually violate Code 296 because his message was rejected. (See, Petition [Docket No. 1]). In making his argument, Petitioner only refers to a message sent at

C.    **Sanctions**

Petitioner also argues that the sanctions imposed on him for violating Code 296 were excessive. (Petition, [Docket No. 1], at 4). Prison officials have discretion to impose disciplinary sanctions, and unless the exercise of that discretion is arbitrary or unreasonable, the sanctions must be upheld. Glouser v. Parratt, 605 F.2d 419, 420–21 (8th Cir.1979); Hodge v. Fisher, No. 10-cv-769 (RHK/JJG), 2011 WL 886200, at *3 (D. Minn. Feb. 9, 2011), report and recommendation adopted, No. 10-cv-769 (RHK/JJG), 2011 WL 884390 (D. Minn. Mar. 14, 2011).

Petitioner was charged with use of mail for abuses other than criminal activity, Code 226, which is categorized as a "High Severity Level" offense. See, 28 C.F.R. § 541.3. Under the regulations, allowable sanctions include, but are not limited to, disallowance of between 25% of 50% (14–27 days) of good-conduct time credit; loss of privileges such as access to the commissary. Id. Petitioner's sanctions—loss of 14 days of good-conduct time credit, loss of commissary and email privileges for 60 days—were thus within the allowable limits. Accordingly, the sanctions were not excessive. See, e.g., Atkinson v. Willingham, No. 3:05–cv–673, 2007 WL 685168, at *5 & n. 6 (D. Conn. Mar.3, 2007) (noting that sanctions imposed within the limits prescribed by regulation were reasonable).

---

10:06 p.m. on November 20, 2017, which the texting service did, in fact, reject. (Ex. C [Docket No. 12-1]). This message, however, is different than the message that the UDC and DHO concluded violated Code 296.

### III.    CONCLUSION

For the foregoing reasons, and based on all the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED THAT** Petitioner Auzio Hewlett's Petition for Writ of Habeas Corpus, [Docket No. 1], be **DENIED** and this action be **DISMISSED with prejudice**.

Dated: April 30, 2019                                          s/Leo I. Brisbois
                                                              Leo I. Brisbois
                                                              U.S. MAGISTRATE JUDGE

### N O T I C E

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. See, Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).